# State of Vermont v. Sean Duffy

[605 A.2d 533]

No. 91-283

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed March 6, 1992

*Gary Kessler*, Supervising Appellate Prosecutor, Montpelier, for Plaintiff-Appellee.

*Charles S. Martin* of *Martin & Paolini*, Barre, for Defendant-Appellant.

**Allen, C.J.** Defendant appeals from his conviction of sexual assault on a minor, 13 V.S.A. § 3252(a)(3), arguing that the court erred by admitting hearsay statements of the putative victim. We affirm.

On July 31, 1989, the three-and-one-half-year-old victim informed a day-care provider that his stepfather had sexually as-

saulted him. After asking some further questions to confirm the boy's remarks, the teacher called the Department of Social and Rehabilitation Services (SRS), who sent an investigator to interview the boy. A police detective, trained as a juvenile investigator, joined the SRS investigator and took notes at the interview. The boy repeated his account of recent sexual contact between his stepfather and him, this time in greater detail. That same afternoon, defendant was arrested and processed for sexual assault, the crime for which he was convicted approximately ten months later.

Defendant first contends that the evidence does not support the court's determination that the statements were trustworthy. See V.R.E. 804a(a)(4) (court must find that "the time, content and circumstances of the statements provide substantial indicia of trustworthiness"). Defendant failed to raise this argument in his motion in limine or at trial. Further, he does not argue on appeal, nor do we conclude upon review of the record, that the court's determination as to the trustworthiness of the statements constituted plain error, if any error at all. Therefore, we need not address this issue. See *State v. Gallagher*, 150 Vt. 341, 347–48, 554 A.2d 221, 225 (1988).

Defendant also contends that statements made by the putative victim to the SRS investigator were not admissible because they were "taken in preparation for a legal proceeding." See V.R.E. 804a(a)(2). He argues that the court misconstrued Rule 804a(a)(2) because the basis of its ruling was that no legal proceeding had been initiated at the time the statements were taken. Rule 804a(a)(2), he points out, precludes the admission of statements taken "in preparation of a legal proceeding" *in addition to* statements made subsequent to the defendant's appearance before a judicial officer. He further argues that legal proceedings are in preparation as soon as the SRS investigator performs the initial interview because substantiated written reports produced from the interview must be maintained by the Department and can be expunged only through statutorily provided legal proceedings. None of these arguments indicate that Rule 804a(a)(2) was intended to exclude any and all statements made to SRS caseworkers during the investigative interview of putative victims.

172

■  We agree that Rule 804a(a)(2) excludes statements made in preparation for legal proceedings even if such proceedings have not yet begun, and that SRS interviews often result in either criminal charges being brought against the accused or expungement proceedings being brought by the accused. These conclusions, however, do not support defendant's argument. The trial court did not rely solely on the fact that investigative interviews precede the initiation of legal proceedings, but also on the investigative nature of the interview and the fact that the investigators do not decide whether to initiate criminal proceedings against the accused abuser. The fact that statements are recorded and may be used in legal proceedings does not necessarily indicate that they are taken "in preparation of" such proceedings. SRS investigators are more concerned with protection of the child than prosecution of the accused. See *State v. Curtis*, 157 Vt. 275, 279, 597 A.2d 770, 772 (1991) (communications made to SRS caseworkers "are made for the purpose of investigation, so as to enable the state to take appropriate protective measures"). The focus of the investigation is not "making a case" against the accused, but ascertaining the reliability of the accusations so that the child can, if necessary, be protected.

The exclusion of any and all statements made during an SRS investigative interview would thwart the very purpose of Rule 804a, which is to allow the "often highly trustworthy" early communications of child victims "to reach the [factfinder] when there is minimal risk of fabrication." See Reporter's Notes, V.R.E. 804a. The admissibility of trustworthy early communications is particularly crucial because of "the high probability of a child victim recanting a statement about being abused sexually." *State v. Gallagher*, 150 Vt. at 347, 554 A.2d at 225. Due to the short time frame of the statutory reporting requirements, see 33 V.S.A. §§ 4913(a) and 4915(a), SRS investigators are often among the first persons to talk directly to children who may have been abused. In view of its purpose, it is unlikely that Rule 804a was meant to exclude this significant source of potentially trustworthy information without any determination as to its reliability. Indeed, a review of the House and Senate Judiciary Committee hearings on the bill creating Rule 804a reveals that

the committee members assumed that the statements made to SRS caseworkers would be admissible if the court found those statements to be trustworthy. See Hearing on S.49 before the Senate Judiciary Committee (March 7, 1985) at 4, 5; Hearing on S.49 before the House Judiciary Committee (April 10, 1985) at 21.

We conclude that statements made by putative victims during SRS's initial investigation into allegations of sexual abuse are not necessarily "taken in preparation for a legal proceeding," and that the court did not err in its determination with regard to the out-of-court statements in the instant matter.

*Affirmed.*